```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA      *    Case No. 14-MJ-403(RML)
                              *
                              *    Brooklyn, New York
                              *    December 22, 2014
     v.                       *
                              *
DORIS HENRIETTE YEMBE,        *
                              *
          Defendant.          *
                              *
* * * * * * * * * * * * * * * *

        TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
              BEFORE THE HONORABLE ROBERT M. LEVY
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:           JUSTIN LERER, ESQ.
                              Asst. United States Attorney
                              United States Attorney's Office
                              271 Cadman Plaza
                              Brooklyn, NY 11201


For the Defendant:            DEBORAH AUSTERN COLSON, ESQ.
                              Colson and Harris
                              80 Broad Street
                              New York, NY  10004
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1      (Proceedings commenced at 1:15 p.m.)
2           THE CLERK:  Calling case no. 14-MJ-403, United
3  State vs. Yembe.  Counsel, please state your appearances for
4  the record.
5           MR. LERER:  Justin Lerer for the United States.
6  Good afternoon, Your Honor.
7           THE COURT:  Good afternoon.
8           MS. COLSON:  Debra Colson for Ms. Yembe.  Good
9  afternoon.
10          THE COURT: Good afternoon.  Good afternoon.
11          THE DEFENDANT:  Good afternoon.
12          THE COURT:  So who would like to go first?
13          MR. LERER:   I received this morning from Ms.
14  Colson a report from Dr. Bardey, B-A-R-D-E-Y, which is an
15  evaluation of the defense, which is now being handed up to
16  the court.
17          THE COURT:  Oh, thank you.
18          MR. LERER:  She has an evaluation of the defendant
19  that the court had ordered at our previous conference.  I
20  haven't finished it yet. It's my understanding that it may
21  call into question the defendant's competence as a criminal
22  defendant.
23          As a result, the government requests, and I believe
24  this is on consent, but I'm sure I'll be corrected if I'm
25  wrong, the situation is we have until January 9th to indict

1     the case.
2             I would very much like to consider this report and
3     also consider whether the government wants to conduct its own
4     examination.  And the government would like to do all of that
5     before it has to make a decision to indict, which I think is
6     very much in the defendant's interest.
7             THE COURT:  Okay.
8             MR. LERER:  So the government's proposal would be
9     -- and unfortunately, the scheduling, I would need a bit of
10    time, especially if we seek a second doctor.
11            THE COURT:  All right.
12            MR. LERER:  So the government would request an
13    adjournment to Monday, February 23rd and the exclusion of
14    time until that date on a couple of grounds.
15            One ground would be 181361(h)(A), because of a
16    proceeding to determine the mental competency of the
17    defendant.
18            And as an alternative ground, the attorneys are
19    discussing a disposition (indiscernible) negotiation as well.
20    However, while the competency is pending, we can't actually
21    have a disposition.
22            So on those grounds, I would request an adjournment
23    and the exclusion of time.
24            THE COURT:  Okay.  I have obviously not read the
25    entire paperwork.

1    Ms. COLSON: No, I understand. I would have
2    provided this sooner, but I wanted to give Ms. Yembe a copy
3    first and speak with her about it, which I was not able to do
4    until this morning.
5    THE COURT: Sure.
6    MS. COLSON: And I have spoke to Mr. Lerer about
7    an adjournment and also with Ms. Yembe and we recognize that
8    the government needs some additional time, although Ms. Yembe
9    is concerned about them taking two full months. She has been
10   incarcerated now for several months and obviously, if we were
11   able to work out some agreement on bail, it wouldn't be quite
12   as concerning to us, but I don't think that's going to
13   happen.
14   So we would ask the government do this as quickly
15   as possible.
16   THE COURT: How long did it take to -- once you
17   located the doctor, how long did it take to perform an exam
18   in your case?
19   MS. COLSON: He visited Ms. Yembe twice. He's
20   also reviewed some additional records that we had received
21   and tried to get in touch with a doctor, a psychologist she
22   was working with in Canada before her arrest. He was not
23   able to reach her, but he will supplement the report, if and
24   when he speaks to her.
25   So based on those two visits over a period of a

1    about two weeks he was able to reach this conclusion.
2             THE COURT:  Okay.  And you first retained him how
3    long before the two weeks?  Just to give me an idea of how
4    long is reasonable.
5             MS. COLSON:   When was the last court appearance?
6             THE COURT:  Good question.   11/25.
7             MS. COLSON:   So I was appointed to the case on the
8    date and he -- I called him that very day and I believe wrote
9    to the court the next day, or several days later.
10            THE COURT:  Okay.  Do you have a doctor in mind?
11            MR. LERER:   This is the first I've seen this.  No,
12   I don't.  I don't even know that we will seek a doctor.
13   There's also internal processes that sometimes take a while
14   if we choose to exercise discretion.
15            THE COURT:  Okay.  Let me just look at the
16   calendar.
17            So it's about -- it's about three weeks.  A little
18   over three weeks.  Three and a quarter weeks from the time
19   you --
20            MR. LERER:   One of the problems is that
21   (inaudible).
22            THE COURT:  But I would think you would know -- if
23   you were going to do this, and let's say you got someone --
24   in contact with someone now or at least in early January, if
25   we use the three week model, that would put us towards late -

1  - the end of January.  Late January.  And I understand why
2  you'd like to include time off until February.
3          And I don't think that's out of the question, but I
4  think it's part of what we're doing now -- for your
5  competence review and your plea negotiations, it would make
6  sense to try have a date towards the end of January.
7          MR. LERER:  I guess -- I understand, Your Honor.
8          And if the court wants to up the proposed date --
9  one of the things that matters to the government is that
10 there be a gap of time between when the exam might be. I
11 wouldn't want time excluded just to the date the exam might
12 be done. I need some time to make a decision after that.
13         So maybe do we want to set -- exam must be
14 completed by date and make that a control date and then set -
15 - exclude time past that date.  Does that make sense?
16         THE COURT:  Ms. Colson?
17         MS. COLSON:  That's fine as long as we -- maybe we
18 can set a date for early February, rather than late February.
19         THE COURT:  So we could have the -- if there's no
20 exam, then I think we could probably come back earlier,
21 right?
22         MR. LERER:  Your Honor, also if I could come back
23 earlier, I would be delighted to come back earlier.  In fact,
24 I hope that goes without saying.
25         So in terms of the setting the date, I guess I

1           would propose one in early February for us to -- for the exam
2           to be completed by and for us to come back for a status and
3           then a date later in February to exclude time --
4                     MS. COLSON:  Okay.
5                     MR. LERER:  I propose that February 23rd be the
6           later of those two days.
7                     THE COURT:  Okay. Let's get the earlier dates
8           first.  Because I understand -- I understand why Ms. Colson
9           and Ms. Yembe want to speed this up.
10                    MS. COLSON:  Yes.
11                    THE COURT:  Okay.  So I have a trial the week of
12          the second, but I think we could probably squeeze a
13          conference in that -- do we need a -- if you do the exam, it
14          will be completed by --
15                    MR. LERER:  I think Your Honor is setting a date
16          for the exam -- the date by which the exam will be completed
17          and we will meet again.  That's my proposal.
18                    THE COURT:  But there's --
19                    MR. LERER:   The same date.
20                    THE COURT:  The same date.  Okay.  That's what I
21          was thinking.  Okay.
22                    Does the morning of February 6th work for everyone?
23          I have 10:30 open.
24                    MR. LERER:  I have an 11 o'clock before Judge
25          Garaufis.

8

1      THE COURT:  Okay.

2      MR. LERER:  So if we -- with that understanding,
3  10:30 would work.

4      THE COURT:  Is there going to be a -- if you do
5  have an exam, there could be a lot to do that day, right?  Or
6  do you think you'll have everything figured out?

7      MR. LERER:  If we had an exam and the exam reached
8  an opposition conclusion, then we would schedule a hearing
9  where the -- it's extremely unlikely but we would then at
10  that point have to schedule a hearing where both doctors
11  would testify, and I can't imagine that would actually occur.

12      THE COURT:  Right.

13      MR. LERER:  On the 6th.
14      So I think that it would just be a status to either
15  -- it would be a status and possibly setting a date for a
16  hearing and possibly disposing of it.

17      THE COURT:  Okay.  Ms. Colson, do you agree?

18      MS. COLSON:  That sounds right.

19      THE COURT:  We could try to make it 10:15.  Why
20  don't we make it -- will 10:15 work?

21      THE CLERK:  Yes.

22      THE COURT:  Okay.  All right.
23      So February 6th at 10:15 for report and status.  If
24  you do not chose to have an evaluation, is that date still a
25  good date, or would we want to move that up?

1  　　　　　　MR. LERER:  I don't know a mechanism that decide -
2  - I think we should give the day a (indiscernible) because
3  our internal processes could eat up that time, even if we
4  don't have he indictment.
5  　　　　　　I take the court's message to be I should be
6  expeditious.
7  　　　　　　THE COURT:  All right.  So what I'm going to do
8  then is we'll send for the 10:15 on the 6th.  If for any
9  reason you want to expedite it, and if there's time on the
10  court's calendar, I'll try to accommodate you.
11  　　　　　　MR. LERER:  Then I would move for the exclusion of
12  time for the two prior stated reasons to the 25th.
13  　　　　　　THE COURT:  Do we have an exclusion form?  It
14  should be one of those.
15  　　　　　　THE DEFENDANT:  Remember last time there was also
16  -- the other one that was here, the pro bono attorney on the
17  case, Mr. Davey.
18  　　　　　　And yesterday he was supposed to submit a motion to
19  you and I would like to know if you received it.
20  　　　　　　THE COURT:  If it's been done electronically, I
21  wouldn't know because I only have a printout that was printed
22  out this morning.
23  　　　　　　THE DEFENDANT:  Okay.  It is --
24  　　　　　　THE COURT:  So I don't know yet.
25  　　　　　　THE DEFENDANT:  But it would not show on the

1     docket sheet?
2              THE COURT:  My docket sheet was printed out in the
3     morning.
4              THE DEFENDANT:  I'd like a hearing regarding that
5     motion.
6              THE COURT:  While I'm looking that up, we're trying
7     to find that (inaudible).
8              THE DEFENDANT:  Sure.
9              THE COURT:  So Ms. Yembe, have you discussed with
10    Ms. Colson what it means to exclude time again.
11             THE DEFENDANT:  Yes.  That I understand.  Clearly,
12    according to my docket sheet, that's all I've been doing
13    lately.
14             THE COURT:  And the exclusion of time would be
15    preceding that time and it would be through the 6th of
16    February.
17             MR. LERER:   23rd, Your Honor.
18             THE COURT:  I'm sorry.  The 23rd.
19             So you understand fully what you're doing.
20             THE DEFENDANT:  Yes.
21             THE COURT:  And you've discussed it with your
22    lawyer.
23             THE DEFENDANT:  Yes.
24             THE COURT:  And you agree voluntarily.
25             THE DEFENDANT:  Yes, but I want to make sure that

```
 1    this motion is with you first.
 2              THE COURT:  I have no idea if it's with me or not.
 3    No, we don't have it yet, but the day isn't over.
 4              THE DEFENDANT:  Well, I would like to have a date
 5    for that motion. I have to have something done regarding that
 6    before February.  It's a 28-2241 from motion, habeas corpus.
 7         (Pause.)
 8              THE COURT:  Okay.  The exclusion is approved.  I'm
 9    just looking at the transcript of the hearing from the last
10    time you were here.
11              THE DEFENDANT:  Okay.
12              THE COURT:  And what specifically is your
13    recollection of what was due?
14              THE DEFENDANT:  Excuse me.  I'm sorry.
15              THE COURT:  Mr. Davey was supposed to --
16              THE DEFENDANT:  Was supposed to submit to you a
17    motion, habeas corpus, 28-2241.  It was supposed to be
18    emailed to you yesterday. I don't know if it's already with
19    you because I'd like to schedule a hearing for that motion.
20              THE COURT:  Okay.  But that's something that was
21    scheduled at the last conference?
22              THE DEFENDANT:  It was not.  It was submitted to
23    you, because I assumed you had to have it before you could
24    schedule it.  I didn't know how it works to get the hearing.
25              THE COURT:  No, but did Mr. Davey -- did we say
```

12

1        something at the last conference about that.
2                THE DEFENDANT:  He was supposed to contact you
3        about it.
4                THE COURT:  Oh, because it's not -- I'm looking at
5        the transcript. I just don't see anything there and I have no
6        recollection of that.
7                THE DEFENDANT:  Last time what we discussed is I
8        said I wanted to be released before Christmas.  And then you
9        advised that immigration had to be addressed and that's what
10       this motion is about.  So we did discuss it last time.  It
11       was before she got on the case, because remember we had two
12       hearing.  One I believe at 11:00 and one at the 3:00.  That
13       was the first hearing.
14               THE COURT:  Right.  (Inaudible) right now.
15               Mr. Lerer, do you recall what was discussed?
16               MR. LERER:   There were a lot of things discussed,
17       Your Honor.
18               I know that the defendant very much wants to get
19       out of jail on Christmas Eve. I don't remember that being
20       discussed and furthermore I would say that the government is
21       trying to exercise a lot of discretion and care in this case
22       and --
23               THE COURT:  Okay.
24               MR. LERER:   Thank you.  But no, I don't recall
25       that.

```
 1                THE COURT:  I'm just scanning through --
 2                THE DEFENDANT:  Thank you.
 3          (Pause.)
 4                THE COURT:  All right.  There was a discussion of
 5     bond. You wanted a bail package.  There was a discussion of
 6     your putting together a bail package and presenting it to the
 7     court.
 8                There was nothing more discussed about -- that I
 9     can see.  Only a brief discussion of what kind of a bail
10     package the government was looking and what might happen.
11                So I don't see anything here that Mr. Davey agreed
12     to do or that he was asked to do during the hearing when I
13     was present.
14                THE DEFENDANT:  Actually, it was me who said that.
15     He was -- remember that hearing we removed Leslie and then we
16     agreed to keep Courtney as a pro bono attorney regardless.
17                THE COURT:  Right.
18                THE DEFENDANT:  And then I expressed this.  And
19     then after that you said that I could not come on as a pro se
20     and you suggested that I would have an attorney.  And then
21     after that we came back and then she was on the case.
22                So it was things that I said actually.  It was not
23     Courtney that we were speaking.
24                THE COURT:  Okay.  I'm looking at what you said and
25     you were just discussing how you'd like to have bail and how
```

14

1 you'd like to be released.

2 THE DEFENDANT: Yes.

3 THE COURT: And there was then a discussion of a
4 package that would need to be presented.

5 THE DEFENDANT: And the government even advised
6 that the situation was really with -- with the immigration
7 was something that had to be addressed and that's what has
8 been addressed in this motion, because you advised it and he
9 advised it and then also it was told that that would have to
10 be addressed in order to avoid being -- going to the other
11 facility. The facility that I was staying in. You said that
12 was not a good facility to be in and that the count would not
13 -- the time there would not count --

14 THE COURT: Right.

15 THE DEFENDANT: -- as time, which would be better
16 to remain at MDC.

17 MS. COLSON: Your Honor, I have not spoken with
18 Mr. Davey about this motion. I did not know he was preparing
19 something, but I will contact him after this court appearance
20 and find out if he has a copy.

21 THE COURT: Do you need a copy of the transcript?

22 MS. COLSON: That would be great.

23 THE COURT: Do you have access to it or do you need
24 me to print it out.

25 MS. COLSON: Can I pull it up off of PACER?

15

1        THE COURT:  It's got a lock on it.  Is that
2  something -- can you pull it up if there's a lock?
3        MS. COLSON:   (Inaudible).
4        THE COURT:  Understood.
5        MS. COLSON:  Okay.  Thank you.
6        THE DEFENDANT:  Two copies.
7        THE COURT:  Well, she'll share it with you.
8        THE DEFENDANT:  I've been asking for a transcript
9  for like six months. I really want a copy.
10       THE COURT:  Okay.  So we're set then. I'll give you
11  a copy of the transcript and you'll be able to look at it and
12  see what was said.
13       MS. COLSON:   Okay.
14       MR. LERER:   Thank you very much, Your Honor.
15  Happy Holidays.  Happy New Year.
16     (Proceedings concluded at 1:35 p.m.)
17     I, CHRISTINE FIORE, court-approved transcriber and
18  certified electronic reporter and transcriber, certify that
19  the foregoing is a correct transcript from the official
20  electronic sound recording of the proceedings in the above-
21  entitled matter.
22
23  *[signature: Christine Fiore]*
24  _____            January 28, 2015
25    Christine Fiore, CERT